**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
---------------------------------------------------------------

| | |
|---|---|
| LOUIS SCHWARZ, et al., | **5:12-CV-177-MMH-PRL** |
| Plaintiffs, | |
| v. | |
| THE VILLAGES CHARTER SCHOOL, INC., et al., | **PLAINTIFFS' MOTION FOR SANCTIONS** |
| Defendants. | |

---------------------------------------------------------------

Plaintiffs, by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 37(c), 28 U.S.C. § 1927, and this Court's inherent power[1], move for an order for sanctions against Defendant, The Villages Charter School Inc., for bad faith litigation misconduct.  Specifically, Plaintiffs move this Court for an order

    (1)    granting default judgement against Defendant on liability and setting the case for trial on damages; *or in the alternative*, striking Defendant's defense of undue burden;

    (2)    compelling Defendant to either produce Dr. Randy McDaniel, Michelle Shideler, and Janet Tutt, for further deposition concerning the articles published[2] and letters[3] written between December 2, 2016 and December 8, 2016 concerning the closure of the Lifelong Learning College at Defendant's expense or to stipulate that Dr.

---

[1] Courts have inherent power to impose sanctions on a party for conduct that offends the legal process upon a finding of bad faith. *Chambers v. NASCO*, 501 U.S. 32, 49 (1991).
[2] *See* ECF Doc. 277-3; ECF Doc. 277-7; ECF Doc. 277-9.
[3] *See* ECF Doc 277-4.

Randy McDaniel, Michelle Shideler, and Janet Tutt made the statements attributed to them in the relevant articles and letters[4];

(3)     ordering Defendant to reimburse Plaintiffs for all costs, expenses, and attorneys' fees reasonably incurred because of Defendant's bad faith conduct, including the costs associated with bringing this motion;

(4)     for any and all other relief the Court deems just and proper.

In support of the Motion, Plaintiffs state as follows:

---

[4] These depositions will be for the purposes of gathering evidence relevant to intentional discrimination and deliberate indifference for the damages portion of the trail.

# TABLE OF CONTENTS

Factual and Procedural Background ................................................................................. 1

I.   Defendant Intentionally Withheld Relevant Documents During Discovery ...................... 1

II.  Defendant Continues to Disseminate False Information To The Public Concerning The Case To Poison The Jury Pool ................................................................ 2

Standard of Review ................................................................................................ 3

Argument ................................................................................................................ 5

I.   Defendants' Persistent Bad Faith Conduct Concerning Discovery Warrants Default ........ 6

II.  Defendants' Recent Bad Faith Conduct And Pretrial Publicity Warrants Default ............ 10

III. Defense Counsel's Bad Faith Conduct Warrants Default ................................................ 14

A.  Defense Counsel Failed to Timely Participate In the Drafting of the Joint Pretrial Statement in Good Faith ................................................................ 14

B.  Defense Counsel's Conduct Multiplied The Proceeding Unreasonably And Vexatiously 18

IV.  No Lesser Sanction Than Default Would Be Sufficient To Serve The Interest Of Justice 20

A.  Reopening Discovery Is Not A Sufficient Remedy ........................................................ 20

V.   Courts Have Granted Default Under Similar Circumstances ........................................... 21

Conclusion ............................................................................................................. 23

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the parties' telephonic conference with the Court on December 14, 2016, the agreement of the parties and the Court, and in the interests of judicial economy, Plaintiffs incorporate the "Background Facts" from Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Fees filed on December 13, 2016, ECF Doc. 277.  In addition to the incorporated facts, Plaintiffs ask the Court to consider the following additional facts for the purposes of this motion.

### I.      Defendant Intentionally Withheld Relevant Documents During Discovery

Plaintiffs served their First Request to Produce on Defendant on August 25, 2013. (Attached at Exhibit A)  On October 23, 2013, Defendant served its response.  (Attached at Exhibit B)  Defendant supplemented its response on December 13, 2013.  (Attached at Exhibit C). Defendant included a four page privilege log accompanying its supplemental production. (Attached at Exhibit D).  Defendant supplemented its response for a second time on July 11, 2014. (Attached at Exhibit E).  Defendant included a 32 page privilege log, listing 164 redactions on the basis of attorney-client privilege and/or work product.  Of these 164 redactions, 88 were redactions of email correspondence between Defendant's employees on the basis of work product.

On February 4, 2014, Plaintiffs sent Defendant a deficiency letter, requesting, in pertinent part, that Defendant provide documents responsive to Plaintiff's Request to Produce No. 18, within two weeks (Attached as Exhibit F).  On March 17, 2014 Plaintiffs sent yet another deficiency letter requesting the same production in response to Plaintiffs' Document Requests No. 18.  (Attached as Exhibit G).  Despite Defendant's assurances that these documents would be produced, Defendant continued to withhold the requested production. Document Request No. 18 sought production of "all [Defendant's] financial documents including but not limited to [Defendant's]

1

tax returns, revenue statements, budgets, profit-loss statements, income statements, audit statements and other financial documents."

Approximately one week before the scheduled depositions of Defendant's witnesses, Defendant dumped 10,000 pages of documents onto Plaintiffs.  Having already scheduled flights and accommodations, as well as the depositions themselves, Plaintiffs proceeded with the scheduled depositions while simultaneously attempting to digest approximately 10,000 pages of document production.

On November 11, 2016 Plaintiffs served a Notice of Taking Deposition pursuant to Fed. R. Civ. P. 30(b)(6), for the purpose of deposing a designated corporate witness to address the exhibits listed in Defendant's pretrial memorandum that had not been produced to Plaintiffs during the discovery period.  (Attached hereto as Exhibit H). On November 14, 2016 Defendant sent a letter to Plaintiffs contesting the topics of testimony listed in Exhibit A to Plaintiffs' Notice, stating that only topics 19 and 24 were "within the scope of the Court's ruling at the Pre-Trial conference." (Attached as Exhibit I).

## II.     Defendant Continues to Disseminate False Information To The Public Concerning The Case To Poison The Jury Pool

On December 5, 2016, Plaintiffs submitted a letter to the Court notifying the Court of Defendant's recent false statements to the press concerning the case and of Plaintiffs' intention to file a motion for sanctions and for preliminary injunction.  (Attached at Exhibit J)  On December 8, 2016, the parties participated in a telephonic conference with the Court.  ECF Doc. 272.  On December 13, 2016, Plaintiffs filed a motion for Preliminary Injunction.  ECF Doc. 277.  On December 14, 2016, the parties had a telephonic conference with the Court concerning that motion. ECF Doc. 279.   Even after Plaintiffs' letter to the Court concerning the false statements

disseminated by Defendant concerning the closure of the Lifelong Learning College, two conferences with the Court concerning the same, and the filing of the motion for Preliminary Injunction, Defendant's website still states "The college has unfortunately been *forced* to close operations as of 12/31/16."[5] (emphasis added)

Plaintiffs now seek sanctions, pursuant to Fed. R. Civ. P. 37(c)(1) for failing to disclose highly relevant information and documents pertaining to the Defendant's affirmative defense of undue burden and for engaging in conduct meant to prejudice, attack and intimidate Plaintiffs.

## STANDARD OF REVIEW

A district court has the authority to grant default judgment pursuant to Federal Rule of Civil Procedure 37(c) for violations of the discovery obligations under Fed. R. Civ. P. 26, as well as under the Court's inherent authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Pursuant to Rule 37(c):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> . . .
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). Rule 37(b)(2)(A)(vi) permits a court to render a default judgment against a disobedient party. Thus, "Rule 37 [] imposes sanctions for a failure to disclose, to supplement an earlier discovery response, or to admit, unless that failure was substantially justified or harmless." *Guar. Ins. Co. v. Heffernan Ins. Brokers, Inc.*, No. 13-23881-CIV-MARTINEZ/GOODMAN, 2014 U.S. Dist. LEXIS 148029, at *7-8 (S.D. Fla. Oct. 16, 2014); Fed. R. Civ. P. 37(c). According

---

[5] http://www.thevillageslifelongcollege.com/index.htm (last accessed 12/15/2016).  Exhibit G

to Rule 26's Committee Notes and cases involving Rule 37, discovery sanctions are intended to penalize the offending party and deter others from engaging in similar conduct.  Advisory Comm. Note (1983) (discussing Rule 26(g)); *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (discussing Rule 37).

Similarly, the Court's inherent authority to grant default judgment is based, in part, on the Court's interest and responsibility to curb abuse of the judicial process." *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) ("courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices"); *Shea v. Donohoe Const. Co.*, 254 U.S. App. D.C. 175, 795 F.2d 1071, 1077 (D.C.Cir. 1986) (district court may dismiss case to "sanction conduct that is disrespectful to the court and to deter similar misconduct in the future" even absent showing of prejudice to other party)); and *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) (strict sanctions serve to "deter those who might be tempted to such conduct in the absence of such a deterrent").

In order to impose the sanction of default, courts must make the following findings: (1) that Defendant acted willfully or in bad faith; (2) that Plaintiff was prejudiced by Defendant's conduct; and (3) that lesser sanctions would not serve [the goals of punishment and deterrence]. *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2006) (citing *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 131 (S.D. Fla. 1987)). In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Allapattah Servs. v. Exxon Corp.*, 372 F. Supp. 2d 1344 (S.D. Fla. 2005) (citation and internal quotation marks omitted). A district court must find "by clear and convincing evidence - a preponderance is not sufficient - that the abusive

behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits.'" *Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1268-70 (S.D. Fla. 2007) (internal quotation marks and citations omitted)

Under 28 U.S.C. § 1927, in addition to default judgment, courts may properly sanction defense attorneys for behavior that contributed to or was the cause of discovery abuses and bad faith conduct. *See Malautea v. Suzuki*, 987 F.2d 1536, 1544 (11th Cir. 1993). Section 1927 provides: "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1988). "Under the plain language of the statute, three essential requirements must be satisfied with respect to an award of sanctions under § 1927. First, the attorney must engage in 'unreasonable and vexatious' conduct. Second, that 'unreasonable and vexatious' conduct must be conduct that 'multiplies the proceedings.' Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (citing 28 U.S.C. § 1927.)

## ARGUMENT

"Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *United States v. One 32' Scorpion Go-Fast Vessel*, 339 F. App'x 903, 905 (11th Cir. July 23, 2009) (per curiam) (quoting *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) (per curiam)). Here, Defendant's willful violations of the obligations implicit in the federal rules are so egregious, Rule 37(c) and the Court's inherent authority permit the Court to grant default judgment in Plaintiffs' favor as well as to order defense

counsel to bear the costs, expenses, and attorneys' fees incurred due to Defendant's sanctionable conduct.

## I.     Defendants' Persistent Bad Faith Conduct Concerning Discovery Warrants Default

From the inception of this case, Defendant has deliberately failed to comply with Plaintiffs' discovery requests in willful violation of its obligations pursuant to Rule 26(e) and Rule 34, [6] causing unnecessary expense and delay and significantly prejudicing Plaintiffs.

In February 2013, in response to Plaintiffs' specific inquiries regarding Defendant's receipt of federal funding, Defendant purposefully misled Plaintiffs, informing Plaintiffs that Defendant did not receive federal funds. *See* ECF Doc. 277, p. 9-10. In July of 2013, in response to Plaintiffs' further inquiries, Defendant again insisted that it did not receive federal funding. *See Id*. It was only when Plaintiffs confronted Defendant with its audited financial statements – statements that were not provided to Plaintiffs by Defendant, but rather that Plaintiffs found independently through a public record search – that Defendant admitted it was in receipt of federal funding.

This occurred over a year after Plaintiffs filed their original Complaint and three months after the deadline to amend pleadings, thus requiring Plaintiffs to file a motion to amend the Complaint to include claims under Section 504. *See Id*., p. 10. Defendant then attempted to obstruct

---

[6] Federal Rule of Civil Procedure 26(e) provides: (1) In General. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered [*5] by the court.

Plaintiffs' amendment of the Complaint by arguing that the structure of Defendant's business was segregated into two halves, K through 12 and the Lifelong Learning College, and that the Lifelong Learning College did not receive federal funds and thus was not subject to the Rehabilitation Act. This argument is clearly contrary to established precedent and has been rejected by this Court throughout the proceedings.[7] Additionally, as Plaintiffs have just recently learned, this depiction of the Defendant's financial structure (as divided into two halves) is yet another willful misrepresentation meant to mislead Plaintiffs.

In response to Plaintiffs' repeated inquiries into Defendant's deficient discovery production, just prior to the deposition of the Villages Charter School, Inc.'s officers, Defendant improperly dumped nearly ten thousand relevant documents related to its financials, producing them about a week before the scheduled depositions.[8] Pursuant to Fed. R. Civ. P. 34, Defendant was required to "produce [responsive documents] organized and labeled to correspond to the categories in the request." *FIDC v. Bowden*, 2014 U.S. Dist. LEXIS 77890, *13 (S.D. Ga June 6, 2014). Defendant willfully failed to do so. Defendant failed to produce its tax returns until the date of the original deposition of Gina Ritch. Defendant failed to produce its financial statements, such as the profit loss statements, disclosing them for the first time after the completion of discovery

---

[7] [T]he Court is in agreement with Plaintiffs that "[a]n entire private corporation will . . . be covered under [the RA] if financial assistance is granted to the corporation 'as a whole' or if it is principally engaged in the business of providing education, health care, housing social services, or parks and recreation." *Squire v. United Airlines, Inc.*, 973 F. Supp. 1004, 1008 (D. Colo. 1997) (citing 29 U.S.C. § 794(b)(3)(A)(I) and (ii)); Runnion ex. rel. *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 517 (7th Cir. 2015) (same). Thus, the Court does not dispute that all of the Charter School Corporation's programs, including the LLC, are covered under the RA. ECF Doc. 189 at 81 n.54.; *see also* ECF Doc. 92.

[8] "The bulky 'document dump' (preferred only by an unskilled or unprepared or overwhelmed lawyer) is a disfavored (and risky) practice that almost always results in grief for the lawyers or the judge or for anyone else left to swim in a great reservoir of undifferentiated and unfamiliar paper. *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1253 n.3 (M.D. Fla. 2012)

and after the deadline for dispositive motions. Defendant failed to produce checks it sent to the Holding company. Under the federal rules, Defendant was required to produce and to supplement production as all of these documents were responsive to Plaintiffs' Request for Production No. 18 and Request for Production No. 49.

Yet, Defendant repeatedly asserted that Plaintiffs' requests under No. 18 were "irrelevant, immaterial and not reasonably calculated to lead to discovery of admissible evidence." See Exhibit __. For Defendant to have made this objection, and to have withheld exhibits, including the profit and loss statements and the checks from Defendant to the Holding Company, is particularly troubling because Defendant now relies on these documents as evidence in support of its affirmative defense, disclosing them for the first time in the pretrial memorandum. See ECF Doc. __ Clearly, Defendant's objections were made "with the improper purpose of causing unnecessary delay, increasing the cost of litigation for the Plaintiff[s], and causing the time for discovery to end before the Plaintiff[s] had obtained the discovery materials [they] needed to litigate this case." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1541 (11th Cir. 1993) (internal quotation marks and citation omitted). Had Defendant complied with its obligations during discovery, Plaintiffs would not have had to seek, by motion, a remedy and ultimately bear the cost of traveling to Florida to re-depose Gina Ritch.

Additionally, after taking the deposition of Gina Ritch on November 30, 2016, Plaintiffs learned of numerous financial records that Defendant has not produced (and for which production was immediately requested). These documents include the letter requesting the advance dated August 17, 2010, original budgets and quarterly "trued up" budgets for each of the seven departments of The Villages Charter School, Inc. for the relevant years (2010-2014), the profit and loss statements for each of the departments for the relevant years, Gina Ritch's accounting ledger,

documentation and proof of rent payments, and documentation concerning patron memberships (including the number, cost, and how many courses the patron members take each year) if maintained for each of the relevant years.  Again, all of these documents are clearly relevant to Plaintiffs' Request for Production No. 18 and Request for Production No. 49 and should have been produced during the discovery period.  Now, at this late date, just a mere month and a half before trial is scheduled to begin, Defendant continues to withhold clearly relevant and admissible evidence – evidence that speaks directly to Defendant's affirmative defense of undue burden and of Plaintiffs' ability to challenge it.

In July of 2014, Defendant made 88 redactions to documents responsive to Plaintiffs' discovery requests, primarily asserting the work product privilege as a basis for the redactions of emails between Defendant's representatives.[9]  *See* Exhibits B and C.  Defendant failed to provide Plaintiffs with sufficient explanations necessary to determine that the work product privilege applies.  Based on the descriptions alone, most of which state that the redacted emails were exchanges between Michelle Shideler and Randy McDaniel regarding Plaintiffs' requests for accommodations, these redactions cannot fall under the work product privilege.  The work product privilege "extends only to documents that an attorney prepares 'in anticipation of litigation.'" *Doe v. United States*, No. 08-CV-80736-KAM, 2015 U.S. Dist. LEXIS 87203, at *17 (S.D. Fla. July 6, 2015) (citing Fed. R. Civ. P. 26(a)(3)(A)). As neither Ms. Shideler nor Dr. McDaniel are attorneys, and the fully redacted emails appear to be exchanges between Ms. Shideler and Dr. McDaniel, it is difficult to understand how the privilege applies as these documents are neither made by attorneys nor appear to be prepared at the behest of Defendant's attorneys.

As a result of Defendant's repeated noncompliance with the Rules, Plaintiffs have been prejudiced.[10] "This misconduct was designed to and had the effect of severely obstructing the discovery process and impeding [Plaintiffs'] ability to conduct discovery vital" to their claims and to refute Defendant's affirmative defense. *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995). Defendant has no justifiable explanation for its noncompliance in discovery.

## II.     Defendants' Recent Bad Faith Conduct And Pretrial Publicity Warrants Default

As the Court is aware, on December 2, 2016 Defendant announced in the The Villages Daily Sun article entitled "Lawsuit Forces Closure of Lifelong Learning College" that the Lifelong Learning College will be forced to close on December 31, 2016 due to this lawsuit.  In this article, Defendant's representatives made false and misleading statements about Plaintiffs, literally blaming Plaintiffs' greed for closing of the College and lying to the public by stating that the College had offered Plaintiffs hearing interpreters for any of the classes Plaintiffs wished to take.[11] Plaintiffs maintain that Defendant lied to the press in retaliation against Plaintiffs, with the hope of damaging Plaintiffs' reputations and of tainting the jury pool. It is clear that Defendant's and its agents' statements to the press were false and were clearly made in bad faith, in an attempt to

---

[10] Plaintiffs readily acknowledge that they did not bring a motion to compel the withheld documents and thus, bring this motion for sanctions under both Fed. R. Civ. P. 37(c), allowing for sanctions where there is no violation of a court order, and under the Court's inherent power. However, Plaintiffs' failure to bring a motion to compel does not detract from Defendant's bad faith conduct and cannot absolve Defendant from its obligation to comply with the federal rules. *See Gumbs-Heyliger v. CMW & Assocs. Corp.*, Civil Action No. 2012-0078, 2014 U.S. Dist. LEXIS 154922, at *13-14 (D.V.I. Oct. 29, 2014) ("The blame for, and adverse consequences of, Plaintiff's failure to fulfill her responsibilities to respond completely to the discovery requests in the first instance'or to supplement her responses as additional information [*14]  and/or documentation became available — cannot be transferred to Defendant by asserting that Defendant failed to object or file a motion to compel.")

[11] See ECF Doc. 277-3

garner favor with readers/potential jurors and to poison readers/potential jurors against Plaintiffs. By Defendant's actions, Plaintiffs have been severely prejudiced, warranting default judgment against Defendant. Not only will Plaintiffs now be unable to obtain injunctive relief to protect their rights in the foreseeable event that Defendant reopens the Lifelong Learning College, the closure of the school will have the effect of changing the posture of the trial and prejudicing any potential future jury into the mistaken belief that this lawsuit is about money alone rather than equal participation, effective communication and appropriate auxiliary aids and services.

"Jury prejudice can be presumed from pretrial publicity if that publicity is sufficiently prejudicial and inflammatory and if it saturated the community where the trial was held. *Murphy v. Florida,* 421 U.S. 794, 798-99, 95 S.Ct. 2031, 2035-36, 44 L.Ed.2d 589 (1975); *Rideau v. Louisiana,* 373 U.S. 723, 726-27, 83 S.Ct. 1417, 1419-20, 10 L.Ed.2d 663 (1963); *Coleman v. Kemp,* 778 F.2d 1487, 1490 (11th Cir.1985), *cert. denied,* 476 U.S. 1164, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). Prejudice is "presumed" from pretrial publicity when such publicity is sufficiently prejudicial and inflammatory, and it saturates the community where the trial is held. *Bundy v. Dugger*, 850 F.2d 1402, 1424 (11th Cir. 1988), cert. denied, 488 U.S. 1034, 102 L. Ed. 2d 980, 109 S. Ct. 849 (1989); *Coleman v. Kemp*, 778 F.2d 1487, 1490 (11th Cir. 1985). In determining whether news coverage is inflammatory, a court may distinguish, and deem acceptable, any pretrial publicity which is purely factual in nature, as opposed to pretrial publicity which includes prejudicial or inflammatory commentary. *Heath v. Jones*, 941 F.2d 1126, 1134-35 (11th Cir. 1991).

As Plaintiffs set forth in their Motion for Preliminary Injunction, Defendant's deliberating misleading statements have generated significant backlash, with numerous postings online, including Facebook posts calling for the issue to go viral. See ECF Doc. 277, p. 11; ECF Doc.

277-5-6. Indeed, the news has already reached Orlando, where, although not defamatory, the Orlando Sentinal published the story.[12]

Defendants made further false statements in the December 8, 2016 article, which reported that "[l]ast week the Villages Charter School dissolved the non-credit learning college because of *recent developments*" in this lawsuit. *See* ECF Doc. 277-9 (emphasis added). This assertion was clearly designed to mislead as there have been no recent developments to the lawsuit that would affect Defendant's financial position. Additionally, in that article, Dr. McDaniel revealed the content of confidential settlement discussions that took place before Judge Lammens. Not only does Dr. McDaniel, who was present at the mediation[13] and knew of the confidential nature of the settlement discussion, purport to reveal information concerning settlement discussions— "no matter what we offered to meet their special needs, it was never enough,"[14] he does so inaccurately in an attempt to taint the opinion of potential jurors. And he does it multiple times. In the December 2, 2016 article Dr. McDaniel again discussed, inaccurately, confidential settlement negotiations asserting that "[e]very attempt we made to serve these folks and *settle this suit* has failed. . . . . It became obvious that they saw The Villages Charter School as a rich target with deep pockets." *See* ECF Doc. 277-3 (emphasis added). He further attempts to argue to the prospective jury in a most misleading fashion that providing interpreters is "simply not something that we can legally divert funds from our K-12 classrooms or lunchroom funds or science labs to subsidize, . . . and since the costs of meeting the plaintiff[s'] demands couldn't come from our K-12 budget, it would come directly from residents in what they pay to take classes.'" *Id.*

---

[12] See http://www.orlandosentinel.com/news/lake/os-lk-lauren-ritchie-villages-federal-ada-lawsuit-20161210-column.html (last accessed on December 19, 2016)
[13] *See* ECF Doc. 237 and ECF Doc. 239.
[14] See ECF Doc. 277-3-8.

Plaintiffs have never asserted that monies earmarked for school lunches could or should be used to pay for interpreters and Plaintiffs have repeatedly argued before this Court that Defendants should not be permitted to mislead the jury concerning the applicable law, which requires an entity which receives any federal funding[15] to provide auxiliary aids and services to accommodate persons with disabilities in all of its operations. Moreover, for the last four and a half years, this case has been hotly contested concerning Defendant's admitted failure to provide interpreters to Plaintiffs so that they could equally enjoy Defendant's courses. Defendant intentionally made false statements that go the heart of the issues in this lawsuit, necessitating sanctions. *See Qantum Communs. Corp*, 473 F. Supp. 2d at 1268-70 ("federal courts have held that the need for sanctions is heightened when the misconduct relates to the pivotal or "linchpin" issue in the case.") (citing *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991) (dismissing plaintiff's claims after he "repeatedly and pointedly lied under oath regarding the pivotal issue in [the] case")).

While "false statements alone do not indicate bad faith," the Eleventh Circuit has determined that "[a] false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose." *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001). Defendant's conveniently timed closure of the Lifelong Learning College less than one month prior to the commencement of trial, clearly amounts to other evidence indicating that the false newspaper statements were made with the purpose to harass.  Defendant has cited no other reason for the closing of the Lifelong Learning College aside from the instant lawsuit; it is clear that the closure is designed as a strategic trial move to moot out Plaintiffs' claims for injunctive relief.  *See* ECF Docs. 277-3; 7-8.  In fact, Defendant has already submitted a letter to this Court, only three days after the announcement of

---

[15] Even if that funding is for school lunches.

the Lifelong Learning College's anticipated closure, implying that Plaintiffs' claims for injunctive relief are now moot.[16] Defendant's closure of the Lifelong Learning College at this critical time is nothing more than a litigation strategy to paint this trial (and Plaintiffs) as being all about money – amounting to inflammatory and prejudicial pretrial publicity meant to impede Plaintiffs' right to a fair trial.  Furthermore, the closing of the Lifelong Learning College and Plaintiffs' inability to argue before the jury for injunctive relief will signal to the jury that Defendant's statements, however inaccurate and misleading, are actually based in fact.

"Federal courts have the inherent power to dismiss an action for misconduct that abuses the judicial process and threatens the integrity of that process -- including misconduct unrelated to the merits of the case." *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995) (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962) (Supreme Court affirmed district court's exercise of its inherent power to dismiss claim for failure to appear at pretrial [**33] conference); *Shapiro v. Amway Corp.*, 102 F.R.D. 564, 565-70 (S.D.N.Y. 1984) (complaint stricken for repeated perjury at deposition)). Accordingly, Defendant's false and misleading statements to the press, combined with the strategic closure of the Lifelong Learning College, amount to bad faith litigation tactics, and warrant default judgment in Plaintiffs' favor. *See Id.*

### III.     Defense Counsel's Bad Faith Conduct Warrants Default

#### A.  Defense Counsel Failed to Timely Participate In the Drafting of the Joint Pretrial Statement in Good Faith

---

[16] On December 5, 2016, Mr. Sheppard writes to Your Honor "I think it is important for me to bring to the Court's attention that a decision has been made to close The Villages Lifelong Learning College effective December 31, 2016. There will be no future classes at The Lifelong Learning College. We believe that this decision should narrow the issues for trial."  ECF Doc. 277-10.

The Eleventh Circuit has upheld sanctions pursuant to Rule 37, including the entry of default judgement, against a party who fails to appear at a scheduling or other pretrial conference; is substantially unprepared to participate--or does not participate in good faith--in the conference; or fails to obey a scheduling or other pretrial order.  In *Rasmussen v. Cent. Fla. Council BSA, Inc.*, 412 Fed. Appx. 230 (11th Cir. February 2, 2011), the Court entered default judgement against plaintiffs/counter-defendants who "failed to provide an adequate accounting, failed to participate in the drafting of a joint final pretrial stipulation, and failed to attend the final pretrial conference." *Id*. at 232.  Similarly here, Defendant has failed repeatedly to provide responsive documents during discovery, failed to timely collaborate in good faith on joint pretrial stipulation, and was substantially unprepared to participate in the pretrial conference.

As outlined in ECF Doc. 277, Plaintiffs provided a draft of the joint pretrial statement to Defendant on September 22, 2016. ECF Doc. 255. Defendant returned the draft with substantial modifications to Plaintiffs at 4:05 pm on September 28, 2015, the day it was due to the Court. *Id*. Despite Plaintiffs' diligent efforts to produce a finalized version of the pretrial statement before the deadline, due to Defendant's delay in returning the draft and subsequent unavailability the night the draft was due, Plaintiffs were unable to comply with the Court's September 28, 2016 deadline and had to move the Court for an enlargement of time to file the pretrial statement. *Id*. The next day, on September 29, 2016, Defendant joined Plaintiffs' motion. ECF Doc. 256.

During the October 5, 2016 pretrial conference, Judge Howard determined that the contributions made by the Holding Company to the Villages Charter School, Inc. were relevant to the Defendant's undue burden defense, and that it was appropriate for the jury to consider those contributions in order to determine whether they were an available resource.  It logically follows that testimony and documentation regarding the purpose of the contributions, how the

contributions have been used, who makes that determination, and whether such funds are comingled across the departments of the Villages Charter School, Inc. are relevant to the analysis of Defendant's undue burden defense. *See* 28 C.F.R. 36.104. Again, during the pretrial conference, Judge Howard stated that Plaintiffs "should be given the opportunity to explore that and to put forth whatever proof [exists] that money is available to satisfy [] the Lifelong Learning College's accommodation responsibilities." (portion of transcript, 33:12-15 attached as Exhibit K).  For this reason, because the Defendant intended to use checks written from the Villages Charter School, Inc. to the Holding Company as evidence in the trial, checks that Defendant never produced to Plaintiffs despite repeated discovery requests for such production[17], the Court determined that Defendant must make a witness available to Plaintiffs for the purpose of questioning regarding the undisclosed checks to avoid any unfair surprise at trial.  Additionally, because Defendant relies upon the argument that the Lifelong Learning College must remain self-sustaining and has a separate budget from the Villages Charter School, Inc. to which it must adhere, the Court determined that Defendants must also produce a witness for the Plaintiffs to question regarding the Lifelong Learning College's profit and loss statements that were not produced to Plaintiffs during discovery, but that Defendant wished to present as evidence during trial.

---

[17] After the pretrial conference, it came to Plaintiffs' attention that the checks, while never produced by Defendant, were provided by a third party witness, John Wise, during his deposition in response to a subpoena that requested "[a]ny and all documents related to the Holding Company of The Villages, Inc.'s *donations or transfer of funds to* The Villages Charter School, Inc. in the past five years [and a]ny and all written contracts and/or agreements between the Holding Company of the Villages, Inc. and The Villages Charter School, Inc." (emphasis added).  Despite the fact that these five checks were not responsive to the aforementioned subpoena, they were hidden amongst approximately 140 pages of otherwise responsive documents.  At the time of the pretrial conference, neither Plaintiffs nor Defendant were aware that the relevant checks were provided by John Wise in this fashion.  To be clear, however, the relevant checks were never provided by Defendant to Plaintiff despite numerous discovery document requests to which the documents were clearly responsive.

Despite the Court's order that Defendant must make witnesses available for Plaintiffs to depose regarding the undisclosed profit and loss statements and checks, Defendant attempted to deny Plaintiffs this access, arguing both that Plaintiffs were on notice of the checks because they were provided by John Wise and that Plaintiffs had lied to the Court.  As Plaintiffs stated in a letter dated November 18, 2016 to Defendant, it was unreasonable for Defendant to take the position that Plaintiffs should have known that, out of the over a hundred pages of checks produced by John Wise (on the day of his deposition) in response to Plaintiff's subpoena requesting documents related to the Holding Company of The Villages, Inc.'s *donations or transfer of funds to* The Villages Charter School, Inc., five of the checks produced were instead written by VCS to the Holding Company. Because these documents were not responsive to the request to John Wise, Plaintiffs could not have reasonably been required to look for them there, nor should Plaintiffs have had to do so.  Yet, again, Defense Counsel's behavior needlessly required Plaintiffs to litigate the matter, conducting research and composing letters in order for Defendant to comply with the Court's October 5, 2016 order.

Furthermore, as Defendant has acknowledged, these topics were discussed extensively with the Court at our pretrial conference on October 5, 2016.  At no time during that pretrial conference did Defendant raise any of the arguments that made to Plaintiffs, over a month later, in objection to the deposition ordered by the Court and agreed to by Defendant.  At no time on October 5, 2016 did Defendant assert that Plaintiffs had been provided with these documents during discovery.  Defense Counsel was on notice from the objections Plaintiffs included in the joint pretrial statement submitted to the Court prior to the pretrial conference that this argument would be asserted at the pretrial conference.  If Defense Counsel believed that it could make this

assertion in good faith, despite the utter failure to comply with Rules 26 and 34, it should have

been prepared to make the argument during the pretrial conference before the Court.

### B. Defense Counsel's Conduct Multiplied The Proceeding Unreasonably And Vexatiously

On November 30, 2016, Plaintiffs deposed Gina Ritch, the designated corporate

representative Defendant produced in response to Plaintiffs' 30(b)(6) notice served pursuant to the

Court's October 5, 2016 ruling[18].  During that deposition, Ms. Ritch testified that the profit and

loss statements offered by Defendant as evidence in the submitted Pre-trial Statement, contained

a budget column that reflected the final year-end version of the Lifelong Learning College's

budget.  Ms. Ritch further testified that Michelle Schideler drafts the original budget for the

Lifelong Learning College at the start of the fiscal year – a budget that Ms. Ritch reviews and

"trues up" on a quarterly basis – and that the budget column of the profit and loss statements reflect

the "trued up" budget at year end after Ms. Ritch has made her quarterly amendments.  To date,

Defendant has not provided the original budgets or the quarterly amendments for the Lifelong

Learning College from the years 2010-2014[19]. Ms. Ritch also testified that all departments within

the Villages Charter School, Inc. are required to be self-sustaining[20]; as such, each has its own

budget, which she reviews quarterly before drafting a final profit and loss statement for each

---

[18] Throughout the deposition of Ms. Ritch, Defendant's counsel was obstructionist, made inappropriate speaking objections, and attempted to impede Plaintiffs' ability to obtain discoverable and relevant information.  For example, Defendant's counsel would not allow Plaintiffs' counsel to inquire (or Ms. Ritch to respond) as to why a payment for rent was recorded on each profit and loss statement when in fact the rent for the buildings in question is paid in full by the Sumter County School Board.

[19] Defendant did provide a draft budget for 2012-2013, which begs the question as to whether additional drafts of the budget were created for each year in question.

[20] This is a departure from the position taken by Defendant throughout this litigation that the Lifelong Learning College is somehow a unique and separate entity that operates differently than the rest of the corporation.

department.  This was the first time Plaintiffs were made aware that such documents exist.[21]  These documents are particularly relevant specifically because of Defendant's insistence that the Lifelong Learning College has its own unique budgeting system – separate and apart from the Villages Charter School, Inc. Yet, as is now evident, what was revealed during Ms. Ritch's deposition is that each and every department within the Villages Charter School, Inc. has its own budget, and thus, the budget for the Villages Charter School, Inc. is comprised of these seven, different, departmental budgets.  Thus, the "separate" budget for the Lifelong Learning College is merely one of six other "separate" budgets that comprise and reflect how the Villages Charter School, Inc. chooses to operate its business.  This budgeting system, and all of these budgets, are evidence in this case – evidence that Defendant has intentionally kept from Plaintiffs in an effort to paint the Lifelong Learning College as a separate and distinct entity within the Villages Charter School, Inc.

Here, Defendant has failed repeatedly to provide responsive documents during discovery, failed to timely collaborate in good faith on joint pretrial stipulation, and has engaged in pretrial publicity meant to prejudice and punish Plaintiffs.  As such, defense counsel should be sanctioned pursuant to 28 U.S.C. § 1927 as they have participated in the withholding of discoverable material and have thus "multiplied the proceedings unreasonably and vexatiously." 28 U.S.C. § 1927. Under these circumstances, costs and fees associated with Defendant's bad faith conduct are entirely appropriate. 28 U.S.C. § 1927 "was designed to curb exactly the kinds of abuses that

---

[21]  During Ms. Ritch's supplemental deposition, Plaintiff learned of and requested numerous documents, including original budgets for all departments for the years 2010-2014; the quarterly review/amended budgets for all departments for the years 2010-2014; profit and loss statements for all departments for the years of 2010-2014; Ms. Ritch's accounting ledger (to which Ms. Ritch testified she needed to refer in order to confirm that Plaintiffs are in possession of all checks written to the Defendant from the Holding Company and from the Defendant to the Holding Company); and two emails from Ms. Ritch to John Wise requesting monies from the Holding Company.

defense counsel committed in this case. It allows district courts to 'assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991)).

## IV.    No Lesser Sanction Than Default Would Be Sufficient To Serve The Interest Of Justice

"[A] default sanction may be proper even when not preceded by the imposition of lesser sanctions. When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions. The most severe sanctions, such as dismissal or default, 'must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, No. 3:12-cv-281-J-32MCR, 2015 U.S. Dist. LEXIS 117123, at *31 (M.D. Fla. Mar. 2, 2015) (internal quotations and citations omitted).

### A.  Reopening Discovery Is Not A Sufficient Remedy

Additional time for discovery would serve only to prolong a case that has been going on for 4.5 years. Alternatively, compelling additional document discovery without delaying the January 31, 2016 trial date would significantly prejudice Plaintiffs as they won't have time to digest the materials and to tailor trial strategy before trial commences. Additionally, compelling production of the withheld documents does nothing to remedy the fact that Plaintiffs did not have had the opportunity to examine the documents through witnesses at depositions.  Plaintiffs will not have time to re-depose the appropriate witnesses and thus, allowing use of the withheld documents

at trial will constitute unfair surprise, resulting in prejudice to Plaintiffs. For example, based on the November 30, 2016 deposition testimony of Gina Ritch, Plaintiffs anticipate that the withheld documents will completely change the landscape of Defendant's corporate structure – a structure Defendant has made a central issue in this case and has misrepresented throughout the litigation.

Moreover, delaying the trial and compelling the production of withheld documents cannot remedy the fact that Defendant has purposefully disseminated false and inflammatory statements to the press, irreparably tainting the jury pool. Thus, the lesser sanction of reopening discovery on this claim "would reward [Defendant's] bad behavior without remedying the prejudice it has caused. An award of fees alone would not restore confidence that all discoverable information has been produced. In other circumstances, an adverse jury instruction might be an appropriate lesser sanction, but in this situation, would be likely to have the same practical effect as entering default." *First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, No. 3:12-cv-281-J-32MCR, 2015 U.S. Dist. LEXIS 117120, at *16-17 (M.D. Fla. Sep. 2, 2015) As such, Plaintiffs submit that due to Defendant's pattern of bad-faith conduct throughout this case, granting default judgment against Defendant "is the only option that fully penalizes [Defendant's] conduct and deters such conduct in the future." *Id.*

## V.  Courts Have Granted Default Under Similar Circumstances

In *Chambers*, the Supreme Court expressly stated that dismissal is an appropriate sanction for abusive litigation practices. *Chambers*, 111 S. Ct. at 2132-33. Moreover, Courts have relied on a variety of rules in dismissing cases for misconduct similar to but much less pervasive than Plaintiff's misconduct. *See e.g., Sun World, Inc. V. Olivarria*, 144 F.R.D. at 390 (court struck answer, dismissed counterclaim, and ordered entry of default pursuant to Rule 11); *Weinstein v. Ehrenhaus*, 119 F.R.D. 355, 359 (S.D.N.Y. 1988) (case dismissed under Rule 37). The Eleventh

Circuit affirmed "the strong interests that a court has in protecting itself from abusive, contumacious conduct. Sanctions, including dismissal or issuance of a default judgment, must be available to protect the ability of district courts to police discovery simply and speedily." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). "

The Eleventh Circuit has upheld sanctions pursuant to Rule 37, including the entry of default judgement, against a party who fails to appear at a scheduling or other pretrial conference; is substantially unprepared to participate--or does not participate in good faith--in the conference; or fails to obey a scheduling or other pretrial order.  In *Rasmussen v. Cent. Fla. Council BSA, Inc.*, 412 Fed. Appx. 230 (11th Cir. February 2, 2011), the Court entered default judgement against plaintiffs/counter-defendants who "failed to provide an adequate accounting, failed to participate in the drafting of a joint final pretrial stipulation, and failed to attend the final pretrial conference." *Id*. at 232.  Similarly here, Defendant has failed repeatedly to provide responsive documents during discovery, failed to timely collaborate in good faith on joint pretrial stipulation, and was substantially unprepared to participate in the pretrial conference.

The record in this case is clear.  Defendant has acted in bad faith, flouting its obligations under the federal rules and willfully prejudicing Plaintiffs' by thwarting their ability to litigate their claims. "Use of the 'ultimate sanction' addresses not only prejudice suffered by the opposing litigants, but also vindicates the judicial system as a whole, for such misconduct threatens the very integrity of the courts, which otherwise cannot command respect if they cannot maintain a level playing field amongst participants." *Dieudonne v. Zuniga*, No. 115-21582-Civ, 2016 U.S. Dist. LEXIS 143750, at *24-26 (S.D. Fla. Oct. 14, 2016) (internal quotation marks and citations omitted)

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this Court grant their motion for sanctions and fees and enter an order (1) granting default judgement against Defendant and in favor of Plaintiffs and setting trial for damages; (2) ordering that Defense Counsel reimburse Plaintiffs for all costs, expenses, and attorneys' fees reasonably incurred because of Defendant's bad faith conduct; and (3) compelling Defendant to either produce Dr. Randy McDaniel, Michelle Shideler, and Janet Tutt, for further deposition concerning the articles published[22] and letters[23] written between December 2, 2016 and December 8, 2016 concerning the closure of the Lifelong Learning College at Defendant's expense or to stipulate that Dr. Randy McDaniel, Michelle Shideler, and Janet Tutt made the statements attributed to them in the relevant articles and letters[24].

If, and only if, the Court denies Plaintiffs' application for default judgement, Plaintiffs respectfully request this Court grant their motion and enter an order (1) striking Defendant's affirmative defense of undue burden; (2) compelling Defendant to either produce Dr. Randy McDaniel, Michelle Shideler, and Janet Tutt, for further deposition concerning the articles published[25] and letters[26] written between December 2, 2016 and December 8, 2016 concerning the closure of the Lifelong Learning College at Defendant's expense or to stipulate that Dr. Randy McDaniel, Michelle Shideler, and Janet Tutt made the statements attributed to them in the relevant articles and letters[27]; (3) ordering that Defendant reimburse Plaintiffs for all costs and attorneys'

---

[22] *See* ECF Doc. 277-3; ECF Doc. 277-7; ECF Doc. 277-9.

[23] *See* ECF Doc 277-4.

[24] These depositions will be for the purposes of gathering evidence relevant to intentional discrimination and deliberate indifference for the damages portion of the trail.

[25] *See* ECF Doc. 277-3; ECF Doc. 277-7; ECF Doc. 277-9.

[26] *See* ECF Doc 277-4.

[27] These depositions will be for the purposes of gathering evidence relevant to intentional discrimination and deliberate indifference for the damages portion of the trail.

23

fees associated with bringing this motion; and (4) for any and all other relief the Court deems just and proper.

Respectfully Submitted,

EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)

By:

/s/ Andrew Rozynski_____
Andrew Rozynski, Esq
arozynski@eandblaw.com

/s/ Brittany Shrader_____
Brittany Shrader, Esq
bshrader@eandblaw.com

By:

/s/ Leah Wiederhorn_____
Leah Wiederhorn, Esq
lwiederhorn@eandblaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 19, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Frank Sheppard, Esquire, at fsheppard@rumberger.com; Mary (Molly) Nardella, Esquire, at mnardella@rumberger.com; Leonard J. Dietzen III, Esquire, at ldietzen@rumberger.com; John David Marsey, Esquire, at dmarsey@rumberger.com; Michael H. Bowling, Esquire, at mbowling@bellroperlaw.com; and Dale Allen Scott, Esquire, at dscott@bellroperlaw.com.

/s/Andrew Rozynski, Esq.
Andrew Rozynski
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
arozynski@eandblaw.com
Attorneys for Plaintiffs

25