UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LOUIS SCHWARZ et al.,

              Plaintiffs,

                                CASE NO. 5:12-cv-00177
                                HON. GEORGE CARAM STEEH[*]

v.

THE VILLAGES CHARTER
SCHOOL, INC.,

              Defendant.

_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION (Doc. 277)**

Now before the court is plaintiffs' motion for a temporary restraining order and

preliminary injunction.  Plaintiffs seek (1) to enjoin defendant The Villages Charter

School, Inc. ("defendant") from closing the Lifelong Learning College until the

termination of this lawsuit, (2) to enjoin defendant from providing any statements to the

press about this lawsuit, and (3) to compel defendant to publicly retract allegedly false

statements published in two articles in defendant's local newspaper.  Plaintiffs have

sought expedited review of their motion because the Lifelong Learning College is slated

to close as of December 31, 2016.  Accordingly, the court established an expedited

briefing schedule shortening the time period for defendant to respond.  Defendant has

now done so.  Having carefully considered the written submissions filed by both sides,

and for the reasons set forth below, plaintiffs' motion for a temporary restraining order

and preliminary injunction shall be denied.

_____

[*] The Honorable George Caram Steeh, Senior United States District Judge for the
Eastern District of Michigan, sitting by designation.

## I. Factual Background

The facts of this case were fully set forth by prior order of the court in Judge Howard's decision dated February 29, 2016. (Doc. 189). The court does not reiterate those facts here, but sets forth only the recent developments which led plaintiffs to move for injunctive relief. On December 1, 2016, the Charter School Board, at a regularly scheduled meeting, voted to close the Lifelong Learning College effective December 31, 2016, based in part on the financial implications of this lawsuit. (McDaniel Affidavit, Doc. 284-1 at PageID 8439). Defendant claims operation of the College jeopardizes the operation of its K-12 Charter School. *Id.* The next day, defendant adopted a formal resolution to this effect. (Doc. 284-1 at PageID 8441).

On December 2, 2016, a local newspaper for the Villages, *The Villages Daily Sun* ("*Daily Sun*"), published an article stating the Lifelong Learning College was closing immediately, and classes scheduled to begin on January 5, 2017 were to be canceled, because this lawsuit had "led to the demise" of the College. (Doc. 277-3 PageID 7571). In that article, Randy McDaniel, Villages Charter School director of education, was quoted stating:

> We are just sick about this. It's so sad that one group of people and their attorneys have forced us to close our doors. Going back for almost eight years, we've tried to offer reasonable accommodations to these folks, including hearing interpreters and assisted hearing devices for any class they wished to attend. No matter what we offered to meet their special needs, it was never enough.

*Id.* McDaniel also stated that "It's just such a shame that a lawsuit by one group can negatively impact the lives of so many different people across our entire community." *Id.* On December 8, 2016, a similar article appeared in the *Daily Sun* reiterating the above quote, and stating that the Village Center Community Development District, a

different entity than defendant, was considering a possible takeover of the Lifelong Learning College, but was apprehensive because it could "potentially becom[e] a target of a similar lawsuit seeking millions of dollars that education leaders say created the college's demise." (Doc. 277-9 PageID 7581).  That article also reported:

> Last week, The Villages Charter School dissolved the non-credit learning college because of recent developments in a lawsuit filed three years ago in the U.S. District Court, Middle District of Florida, by a New York City law firm on behalf of a group of hard-of-hearing residents in the community. That group rejected all efforts to negotiate a settlement, said Randy McDaniel, the Charter School's director of education.

*Id.*  Plaintiff Louis Schwarz was quoted in that article stating, "I participated in bringing this lawsuit because I wanted an equal opportunity to learn and grow at the Lifelong Learning College, just like all Villages residents who enjoy the classes offered by the college."   *Id.*   Also, a similar article appeared online at defendant's website on December 7, 2016, stating that the Lifelong Learning College "would shut down as the result of a lawsuit filed by deaf residents of The Villages seeking accommodation so they could take part in activities at the college." (Doc. 277-7 at PageID 7579).

As a result of this negative publicity, plaintiffs claim that they have been accosted in print and in person, have been belittled and besmirched on social media and in the local press, and have been the subject of intimidating tactics and threats up to and including a death threat. (Doc. 277-2).  Plaintiff Schwarz also alleges that in retaliation for filing this lawsuit, The Villages of Lake-Sumter, Inc. has initiated trumped up code violation charges against him for allegedly running a financial advising business out of his home. (Doc. 278 at PageID 8180).

Several articles favorable to the plaintiffs have also appeared, one in the Villages-news.com on December 2, 2016 (Doc. 284-3, PageID 8445-46), another in the

*Orlando Sentinel* on December 11, 2016.   (Doc. 284-4, at PageID 8498-501). Both articles include numerous quotes from Schwarz setting forth his side of the story.  The *Orlando Sentinel* article reports that deaf people have been denied interpreters for the Villages' Lifelong Learning College and states, "What's up with that?  Do The Villages developers just hate deaf people?"  *Id.* at PageID 8499.  In addition to other statements favorable to the plaintiffs, the article concludes that "[t]he developers wouldn't think of trying to contest requirements to make sidewalks accessible to wheelchair users, and this is no different."  *Id.*

Defendant argues that plaintiffs' motion for a preliminary injunction should be summarily denied for plaintiffs' alleged failure to comply with the strict requirements of Local Rules 4.05(b)(2) and (3) and 4.06(b)(1) by failing to allege specific facts of irreparable injury.   The court rejects this argument, as it finds that plaintiffs have satisfied the Local Rules.  The court turns now to the standard of law for injunctive relief and addresses plaintiffs' motion on the merits.

## II. Standard of Law

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if plaintiffs demonstrate each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest.  *Id.* at 1329.  "In this Circuit, [a] preliminary injunction is an extraordinary and

drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998) (internal quotation marks and citations omitted).  When a party seeks an injunction forcing the other party to take some action, it becomes a "mandatory or affirmative injunction," and the burden on the moving party increases. *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295-96 (M.D. Fla. 2010).

The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.'" *Suntrust Bank v. Houghton Mifflin Co.,* 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 896 F.2d 1283, 1284 (11th Cir. 1990)). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (internal quotation marks and citation omitted).

### III. Analysis

#### A.      Substantial Likelihood of Success on the Merits

The first and most significant inquiry is whether plaintiffs have shown a strong

likelihood of success on the merits.  In order to evaluate this factor, the court first

outlines the elements of plaintiffs' claim.  Plaintiffs' sole remaining claim against

defendant is a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §

794(a) which provides:

> No otherwise qualified individual with a disability in the United
> States . . . shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity receiving
> Federal financial assistance.

29 U.S.C. § 794(a).  To establish a violation of Section 504 of the Rehabilitation Act, a

plaintiff must meet four requirements: (1) she is an individual with a disability; (2) she is

otherwise qualified for participation in the program; (3) the program receives federal

financial assistance; and (4) she was discriminated against solely by reason of her

disability.  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1300 (11th Cir. 2005).

The parties do not seriously dispute the first and third factors: they agree that plaintiffs

have a disability recognized under the Rehabilitation Act, and the Lifelong Learning

College receives federal funds.  The crux of the dispute is whether plaintiffs' request for

American Sign Language ("ASL") interpreters amounts to a "reasonable

accommodation" such that defendant's refusal to provide them amounts to

discrimination under the Act.  These inquiries necessarily are analyzed under the

second and fourth factors.

In order to determine if the second element has been met, in other words, that

plaintiffs were "otherwise qualified for participation in the program," the trier of fact must

consider whether "reasonable accommodations" would have made the plaintiffs

qualified.  *See Wood v. President & Trustees of Spring Hill Coll. in the City of Mobile*,

978 F.2d 1214, 1222 (11th Cir. 1992).  Plaintiffs have the initial burden of requesting a specific accommodation.  *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curium) ("[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."); *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1294 (S.D. Fla. 2016).  Here, plaintiffs requested that defendant provide them with qualified ASL interpreters in order to allow them to participate in defendant's Lifelong Learning College enrichment classes.

In the court's prior summary judgment order, the court outlined the various applicable regulations for determining what constitutes "reasonable accommodation" as set forth by the Department of Education, and the Department of Agriculture, the two agencies which provide defendant's federal funding.  (ECF 189, PageID 6839-46).  Several regulations are cited, and analysis of whether those regulations require defendant to provide ASL interpreters is a complex factual inquiry.  Defendant may attempt to refute plaintiffs' "reasonable accommodation" claim by showing that their use would have amounted to an "undue hardship."  *Id.* at PageID 6845 (citing *Onishea v. Hopper*, 171 F.3d 1289, 1303 (11th Cir. 1999)).

In determining whether the accommodation plaintiffs requested was reasonable, the court is guided by decisions addressing the  Americans with Disabilities Act of 1990 ("ADA"), as the Rehabilitation Act is coterminous with the ADA, such that decisions under either statute are precedent under the other.  *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) ("[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").  The Eleventh Circuit has long ago recognized

that an individual is a "qualified person with a disability," such that she could participate in the program, notwithstanding her lack of qualification, if a reasonable accommodation would qualify her.  *Onishea*, 171 F.3d at 1301.  In their joint final pre-trial statement, plaintiffs state that they "wish to participate in the classes offered at the Lifelong Learning College, but cannot do so in a meaningfully equal manner because of their disability."  (ECF 259 PageID 7334).  Plaintiffs are only able to participate in the classes if their hearing disability is accommodated.

Given the legal framework outlined above, the most significant question for the trier of fact at trial is whether the accommodation plaintiffs requested: qualified ASL interpreters in the classroom, is reasonable.  In determining whether the request amounts to a "reasonable accommodation," defendant may rebut the claim by showing that the use of such interpreters would pose an undue hardship.  *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007).

Having outlined the parties' burdens of proof on the sole remaining claim in this litigation which once involved as many as four defendants and five counts, the court turns now to the question of whether plaintiffs are substantially likely to prevail on their discrimination claim.  And the court finds that they are not.  The issue of whether the accommodation plaintiffs requested is reasonable remains very much in dispute, and based on the proofs presently before this court, the undersigned is not prepared to find that plaintiffs are substantially likely to succeed on the merits.  Whether providing sign language interpreters would pose an undue hardship on defendant, either because doing so would be cost prohibitive, or because other factors such as the availability of such interpreters in the community make compliance impossible or difficult, remains a

subject of much dispute — a dispute the court is not able to resolve at this juncture. The issue remains one for the factfinder at trial.

Judge Howard devoted considerable time evaluating the issue in her prior order granting in part, and denying in part, defendant's motion for summary judgment.  Having carefully considered her prior opinion and order, the court does not find any indication that she determined that plaintiffs were substantially likely to prevail on the merits. Neither does the undersigned.  The facts regarding defendant's financial position, the operating costs of the Lifelong Learning College and how it is/was funded, the availability of interpreters, and whether defendant's board members had any discriminatory animus, remain very much in dispute.  Based on the record now before the court, plaintiffs have failed to demonstrate that they are substantially likely to prevail on the merits.  Having found the proofs deficient on the question of whether plaintiffs are substantially likely to prevail on the merits, this factor militates against the granting of injunctive relief.

**B.     Irreparable Harm**

**1.       Presumption of Harm**

Although plaintiffs' failure to show a substantial likelihood of success on the merits is fatal to their motion for injunctive relief, the court discusses the remaining preliminary injunction factors and finds that they also weigh against awarding the relief sought here.  The second factor is irreparable harm.  Plaintiffs argue that they need not establish irreparable harm as it may be presumed upon a showing that the Rehabilitation Act has been violated.  Although plaintiffs are correct that irreparable harm may sometimes be presumed when plaintiffs can establish that a statute was

violated, and the statute at issue specifically provides for injunctive relief in a particular set of circumstances, or the purpose of the statute would be eviscerated without injunctive relief, *see C.B. v. Bd. of School Comm'rs of Mobile Co.*, 261 F. App'x 192, 194 (11th Cir. 2008), here, plaintiffs have not established that the Rehabilitation Act was violated; thus, no such presumption applies.

### 2.    Taint the Jury Pool

Thus, the court must consider whether plaintiffs have established irreparable harm on the merits.  Plaintiffs argue that without injunctive relief, the jury pool will be tainted and their reputation will be harmed.  They claim the jury pool will be tainted because the articles portray them as money grubbing and unreasonable individuals who refused offers of accommodation, even offers of sign language interpreters.  They also assert that the jurors may blame them for the closing of the Lifelong Learning College based on their alleged greed.  The first allegation of harm can be summarily dismissed. The Villages are located in Lake, Marion, and Sumter Counties within the jurisdiction of the Ocala Division of the Middle District of Florida.  The articles appeared in a local newspaper published by defendant in Sumter County only.  The trial is set in the Orlando Division of the Middle District of Florida, which is comprised of Brevard, Orange, Osceola, Seminole, and Volusia Counties, none of which are home to any of the Villages.  It appears unlikely that any of the jurors called to service in Orlando will have read the local articles in question.  In the unlikely event that they have, those jurors could be screened off the jury through a for cause challenge during voir dire. Moreover, a newspaper article favorable to the plaintiffs appeared in the *Orlando Sentinel.*  (Doc. 284-4).

Plaintiffs also allege that the College must be reopened else plaintiffs will appear to jurors to be about money alone, rather than about pursuing their need for auxiliary aids and services to participate equally in programming, as their claim for injunctive relief will be mooted.  Because it is the court and not the jury that will decide any claim for injunctive relief, plaintiffs' argument must be rejected.  Also, nothing about closing the school prevents plaintiffs from making the case to the jury that they wanted sign language interpreters to participate in the enrichment classes offered by the Lifelong Learning College.

### 3.      Reputational Harm

The court turns now to plaintiffs' third allegation of harm: harm to their reputations.  Plaintiffs allege that they have been victims of considerable abuse as a result of the articles.  Specifically, plaintiff Louis Schwarz claims that letters published in the local paper have vilified him, and he has received threatening telephone calls, e-mails, and on-line attacks, as well as endured individuals driving by his home, apparently to intimidate him.  (Doc. 277-2).  Schwarz also claims that The Villages of Lake Sumter has threatened legal action against him for allegedly providing financial advising services out of his home in violation of certain covenants and restrictions governing his community in retaliation for his role as a named plaintiff in this lawsuit. (Doc. 277-2 at PageID 7569, Doc. 278 PageID 8180)

In order to alleviate this perceived reputational harm, plaintiffs seek a retraction of the allegedly false articles, and a blanket gag order preventing defendant from making any extrajudicial statement about the lawsuit.  As an initial matter, it is worth noting that this is a lawsuit about a discrimination claim, not a defamation or retaliation

claim.  Thus, the court is not well positioned to make a determination about whether the representations in the articles at issue are false or misleading.  It remains possible that the Lifelong Learning College was in fact closed because of the costs of this litigation. Defendant asserts as much in its response brief and have submitted the affidavit of McDaniel, (Doc. 284-1), and a copy of defendant's formal resolution terminating the Lifelong Learning College, *id.*, to this effect.  It is also possible that defendant offered sign interpreters.

Deciding whether the articles are in fact false such that a retraction might be owing might necessarily involve an analysis of the parties' confidential settlement negotiations.  While defendant's possible disclosure of those confidential discussions might be wrongful, it is possible that they would support a finding that the articles were in some measure truthful.  At any rate, these inquiries are not properly before this court as they do not relate to the discrimination claim, which is the sole matter pending here. *See Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997), *opinion amended on reh'g*, 131 F.3d 950 (11th Cir. 1997) (preliminary injunction denied as wholly unrelated to the underlying action); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint").

Thus, the court is not able to order a retraction as injunctive relief as that remedy is not available as part of a discrimination claim, the only claim pending here. Moreover, injunctions are limited to prospective relief only.  *Alabama v. U.S. Army Corps of Eng.*, 424 F.3d 1117, 1133-34 (11th Cir. 2005).  As the Eleventh Circuit has noted, "[a] preliminary injunction is completely at odds with a sanction for past conduct

that may be addressed by adequate remedies at law." *Id.* at 1133.  Of course, this is not to say plaintiffs are not without recourse for the reputational harm they allege.  They remain free to file a new suit for defamation or retaliation.

### 4.    Blanket Gag Order

Having found that the court is not able to order a retraction of statements made in defendant's local newspaper or on its website given the posture of this case where there is no relationship between the relief sought and the Complaint, the court next considers plaintiffs' request for a blanket gag order preventing defendant from making any extrajudicial statement about the case.  "Broad gag orders are restraints on expression and raise First Amendment concerns."  *United States v. Prince*, 753 F. Supp. 2d 561, 568 (E.D. Va. 2010) (citing *United States v. Brown*, 218 F.3d 415, 424-25 (5th Cir. 2000)).  The Courts of Appeals are split on the standard of law for determining when a gag order may be appropriate, and the Eleventh Circuit has not yet weighed in on the issue, but all courts to address the matter agree there must be some real threat of prejudice to a fair trial.  *United States v. McGregor*, 838 F. Supp. 2d 1256, 1261-62 (M.D. Ala. 2012) (collecting cases).  As the *McGregor* court summarized, the Sixth, Seventh, and Ninth Circuits have adopted the "clear and present danger" test.  *Id.* at 1261. The Third and Fifth Circuits have adopted the "substantial likelihood of material prejudice" standard.  *Id.*  And the Fourth and Tenth Circuits have adopted the "reasonable likelihood" of prejudice standard.  *Id.*  Even under the most deferential standard, plaintiffs have failed to show that any statements by defendant or its attorneys are reasonably likely to taint the jury pool.   For the reasons discussed above, defendant's statements in their local newspaper, far outside the reach of prospective

jurors residing in the Orlando Division of the Middle District of Florida, are not reasonably likely to prejudice plaintiffs' trial.  Moreover, the only article published in Orlando, was an editorial favorable to the plaintiffs.  (Doc. 284-4).  Accordingly, plaintiffs' request for a broad gag order shall be denied.

### 5. Mooting Plaintiffs' Claims for Permanent Injunctive Relief

Next, the court considers plaintiffs' argument that they will be irreparably harmed if the court does not enjoin the Lifelong Learning College from closing as their claims for permanent injunctive relief at the conclusion of the trial will be mooted.  Plaintiffs express concern that defendant seeks to avoid its obligations under the Rehabilitation Act by reopening the Lifelong Learning College under the auspices of another entity of the Villages at the conclusion of this trial.  Should the factfinder determine that defendant could provide sign language interpreters without experiencing an undue hardship, permanent injunctive relief may be available at the conclusion of the trial. Although permanent injunctive relief, which might include ordering the College to reopen remains a possibility, the court reaches no final opinion on that question here.[1]  In any event, the court's ability to enter permanent injunctive relief would not be altered by a preliminary decision here as to whether to reopen the College for the thirty days that exist between today and the date the trial of this matter is scheduled.  And since it is this court, and not the jury, that will decide the matter of permanent injunctive relief, plaintiffs can show no prejudice by the closing of the Lifelong Learning College for the month or so that exists before this matter is tried.

---

[1] *See Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach*, 846 F. Supp. 986 (S.D. Fla. 1994) (finding that "had the City cut their entire budget for the Department of Leisure Services, effectively eliminating recreational programs for disabled and non-disabled alike, the ADA would not be implicated because both groups would be equally affected.").

Defendant argues that this court could not order the school to remain open because operation of the Lifelong Learning College is unrelated to the federal funding defendant receives.  In support of this argument, defendant improvidently relies on *New York v. United States*, 505 U.S. 144, 167 (1992), where the Supreme Court recognized that Congress can seek to influence a State's legislative conduct indirectly by attaching conditions on the receipt of federal funds.  The issue here is not what powers Congress wields, but the authority of this court to order injunctive relief to vitiate the purpose of the Rehabilitation Act.  Although the above authority cited by defendant is irrelevant, the court does agree with defendant that preliminary injunctive relief is not appropriate here where plaintiffs have failed to show that they will be irreparably harmed absent its issuance.

There is yet another reason why plaintiffs have failed to show irreparable harm. By plaintiffs' own admission, they have been unable to meaningfully participate in the enrichment classes offered by the Lifelong Learning College due to their hearing impairments.  Keeping in mind that the primary purpose of a preliminary injunction is to maintain the status quo pending trial, injunctive relief is not warranted here where plaintiffs have been unable to participate in the Lifelong Learning College as it has existed without the availability of some auxiliary aids, and thus, they are no more impacted whether the school remains open or closed.  Only with some accommodation can plaintiffs participate in the courses offered, and since defendant has not been offering the aids which plaintiffs claim are crucial to their ability to participate in defendant's programming, whether the school remains open or closed until the trial is complete will not impact these plaintiffs.  This lawsuit has been pending for well over

four years.  During that time, plaintiffs assert they have been unable to meaningfully participate in the courses offered by the Lifelong Learning College.  Ordering the college to remain open without ASL interpreters would not benefit the plaintiffs.  Only one month remains before this matter is tried by a jury.  Keeping the school open until that time is not necessary to maintain the status quo.

In sum, plaintiffs have failed to show irreparable harm as the reputational injury they allege is unconnected to the discrimination claim pending here; their request for a prior restraint on extrajudicial speech is unavailable where there is no risk of tainting the jury pool; keeping the enrichment classes going now will not impact this court's equitable powers at the conclusion of the trial, and injunctive relief is not necessary to maintain the status quo.

## C.   Balancing the Harms

Next, the court balances the competing interests of the parties.  Here, the court weighs plaintiffs' alleged harm of being deprived of the ability to seek sign language interpreters to allow them to enroll in enrichment classes at the conclusion of the trial if defendant is not required to reopen,[2] against defendant's alleged undue hardship. Plaintiffs claim that defendant has no competing interest to be protected because allegedly, it can afford to keep its enrichment courses going, and the program is slated to close solely as a litigation tactic.  Plaintiffs claim that the Lifelong Learning College is generating a substantial profit for defendant, but defendant is disguising that profit by suggesting that the college has to pay rent to the K-12 Charter Schools where it offers

---

[2] To the extent that plaintiffs assert reputational harm, the court has already found such to be unrelated to the discrimination claim pending here.  If the harm alleged is the potential taint of the jury pool, the court has already rejected that theory outright.

its classes.  In particular, plaintiffs assert that defendant paid $150,000 in rent in 2010,
$218,463 in 2012, $246,260 in 2013, and $293,604 in 2014, for a total over that four
year period of $1,034,107.  (Doc. 277 PageID 7550).

Plaintiffs argue that defendant can afford to offer sign language interpreters
because it could have allocated the money spent on rent, to pay them.  Plaintiffs'
argument that the Lifelong Learning Classes did not need to pay rent to the Villages
Charter School is just that: argument.  And while it is an argument that might be
persuasive to a juror, it is not persuasive to the court.  At first blush, it strikes the court
that these rent payments quite likely are an appropriate disbursement for use of the
Charter School's facilities.  The factfinder might ask why would the College be permitted
to use the Charter School classrooms without paying for that access.  On the other
hand, it may be possible to establish that the amount of rent payments greatly exceed
the market value of the leased space.

In any event, the financial resources of the defendant are a subject of some
significant dispute.   The proofs on the financial viability of providing sign language
interpreters and keeping the College open are expected to be somewhat voluminous
and may explain, in part, why the parties anticipate that the trial of this matter will span
nearly three weeks.  Given the record now before the court, it is impossible for the court
to determine whether defendant can provide the accommodation sought at a
reasonable cost/benefit ratio.  Thus, the court is unable to determine which party suffers
the greater harm: plaintiffs, because of their lack of access to the enrichment courses,
or defendant, because of the cost or other difficulties of providing the auxiliary aids
sought.

This issue was previously the subject of defendant's motion for summary judgment, and Judge Howard in her thorough 105-page opinion found that a jury question existed as to the question of whether defendant had discriminated against plaintiffs on the basis of their disability, or whether it faced an undue hardship in providing the accommodation requested by plaintiffs.  (Doc. 189 at PageID 6833-57). Given this significant factual dispute, the court is not able to say that the scales tip in favor of plaintiffs in measuring the harm to be endured by the lack of injunctive relief, or whether they tip in favor of defendant if such relief is granted.  As the proofs now exist, it is just as likely that defendant will establish that it cannot afford to operate the Lifelong Learning College if the requested accommodations are provided as that plaintiff will establish the contrary.  Accordingly, balancing the hardships does not favor granting injunctive relief.

**D.     The Public Interest**

Finally, the court considers whether the public interest would be served by granting a preliminary injunction.  Plaintiffs argue the public interest would be served by ordering the defendant to reopen the Lifelong Learning College because the program serves 18,000 Villages' residents and employs approximately 200 paid instructors. Defendant responds that keeping the Lifelong Learning College open threatens the viability of its K-12 Charter school by draining vital funds that could be used for the children in order to operate a strictly voluntary ancillary adult enrichment program. Defendant also argues that taking as true plaintiffs' argument that the Lifelong Learning College discriminates against those with hearing disabilities, ordering its continued operation without any accommodation would not be in the best interests of the public.

Weighing these competing claims, the court does not find that the scales tip in favor of injunctive relief.

## IV. Conclusion

For the reasons set forth above, plaintiffs' motion for a temporary restraining order and preliminary injunction (Doc. 277) is DENIED.

**IT IS SO ORDERED.**

Dated:  December 22, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 22, 2016, by electronic and/or ordinary mail.

s/Barbara M. Radke
Deputy Clerk

---