UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LOUIS SCHWARZ et al.,                    CASE NO. 5:12-cv-00177
                                          HON. GEORGE CARAM STEEH[*]
      Plaintiffs,

v.

THE VILLAGES CHARTER
SCHOOL, INC.,

      Defendant.

_____/

### ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS (Doc. 282)

Now before the court is plaintiffs' motion for sanctions.  Plaintiffs seek default judgment, or in the alternative, seek to preclude defendant the Villages Charter School, Inc., from making its undue burden defense, based on defendant's alleged failure to cooperate in discovery and in preparing the joint final pretrial statement, for allegedly making false statements to the press in order to influence this litigation, and for closing the Lifelong Learning College.  Defendant has responded in writing.  Having carefully considered the written submissions, plaintiffs' motion for sanctions shall be denied.

### A. Factual Background

The facts of this case were fully set forth by prior order of the court in Judge Howard's summary judgment decision dated February 29, 2016.  (Doc. 189).  Recent developments including the closing of the Lifelong Learning College, and the publication of articles in the local press about it, were thoroughly discussed in the court's prior order

---

[*] The Honorable George Caram Steeh, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

denying plaintiffs' motion for a temporary restraining order and permanent injunction. (Doc. 285). The court does not reiterate those facts here. The court limits its discussion here to the facts surrounding plaintiffs' claim that defendant failed to cooperate in discovery, and failed to cooperate in preparing the joint final pretrial statement.

As to plaintiffs' claim that defendant did not adequately participate in preparing the joint final pretrial statement, the court has considered the affidavit of defense counsel Mary Nardella, stating that she sent multiple e-mails to plaintiffs' counsel regarding the joint final pretrial statement, beginning over a week before the document was due, and drafted a joint motion to extend the deadline for its filing. (Doc. 286). She also attested to the fact that she continued to communicate with plaintiffs' counsel working late into the evening the night before the statement was due, staying until 10:00 p.m. before finally leaving to put her baby to bed. *Id.* According to Nardella's affidavit, defense counsel spent more than 70 hours working on the first joint final pretrial statement, and more than 40 hours working on the second joint pretrial stipulation. *Id.*

As to plaintiffs' claim that defendant did not cooperate in discovery, the court finds plaintiffs' claim that defendant listed certain documents as exhibits on the pretrial statement without previously disclosing those documents to be the most significant allegation of wrongdoing. Those documents were certain profit and loss statements for the years 2010, 2011, 2012, and 2014, and checks from defendant to the Holding Company. Plaintiffs objected to the use of those documents in the joint final pretrial order and Judge Howard discussed the objections on the record during the joint final pretrial conference held on October 5, 2016. (Doc. 267). At that time, plaintiffs

requested that the materials be precluded or that they be allowed to take a deposition concerning the omitted documents. (Doc. 267 PageID 7445-46). Defendant agreed to produce a corporate representative for the deposition and plaintiffs agreed that was satisfactory. *Id.* at PageID 7446. Judge Howard reopened discovery for the limited purpose of taking the deposition of the corporate representative regarding those exhibits that were identified on defendant's exhibit list, but were not produced during discovery, and ordered that the deposition be taken before November 30, 2016. (Doc. 263).

Over a month later, on November 11, 2016, plaintiffs served their notice of deposition of defendant's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). The notice identified twenty-four areas of inquiry, including, among other things, information about defendant's bank accounts, how money was transferred between the Holding Company and the Lifelong Learning College, and sought production of checks received by defendant from the Holding Company or paid to the Holding Company by the defendant. (Doc. 283-7). Defendant objected to the alleged overbreadth of the notice via a letter to plaintiffs' counsel stating that only two areas of inquiry were allowed based on Judge Howard's order: (1) all profit and loss statements listed on defendant's exhibit list, and (2) Dragon Naturally Speaking software, literature, and equipment, listed on defendant's exhibit list. (Doc. 283-8).

In its letter, defendant complained that the majority of the documents sought related to advances and payments between the Holding Company and defendant which it asserted were previously produced during the deposition of John Wise, vice-president and CFO of the Holding Company, on November 11, 2014. *Id.* Because discovery did not end until February 1, 2015, defendant pointed out that plaintiffs had more than two

months to inquire about those documents. *Id.* In their motion for sanctions, plaintiffs admit that the checks written from defendant to the Holding Company were produced by Wise, but claim that their production was not responsive to his subpoena, and that the checks were "hidden amongst approximately 140 pages of otherwise responsive documents." (Doc. 282 PageID 8205 n.17).

Plaintiffs did not file a motion to compel based on defendant's objection to the scope of the questions they sought to pose to defendant's corporate representative, but went forward with the deposition of Gina Ritch, defendant's director of accounting, on November 30, 2016. Her deposition lasted five hours. This was the second time that plaintiffs deposed Ritch. Plaintiffs deposed Ritch about the profit and loss statements, and about the checks issued from the defendant to the Holding Company. (Doc. 277-11).

As a result of Ritch's second deposition, plaintiffs claim they learned of additional relevant documents for the first time: (1) a letter requesting the advance dated August 17, 2010, (2) original budgets and quarterly budgets for each of defendant's seven departments, (3) profit and loss statements for each of the departments, (4) Ritch's accounting ledger, (5) proof of rent payments, and (6) documentation concerning patron memberships such as the number, cost and how many courses the patron members participate in each year.

Plaintiffs claim that those documents should have been produced in response to item 18 of their requests to produce which stated, "Please produce all your financial documents including but not limited to your tax returns, revenue statements, receipts of amenities fees, expense reports, balance sheets, financial statements, budgets, profit-

loss statements, income statements, audit statements and other financial documents." (Doc. 282, Ex. A at PageID 8222).

Plaintiffs also allege that defendant's responses to their requests to produce sent in August, 2013, were incomplete, and state that in February and March, 2014, plaintiffs sent defendant two letters stating their responses to plaintiffs' requests to produce were deficient. Plaintiffs never filed a motion to compel. Plaintiffs assert that one week prior to the depositions of defendant's witnesses, defendant served them with 10,000 pages of documents. Plaintiffs suggest that they were unable to process the document production prior to the depositions, but it is undisputed that plaintiffs never sought to adjourn the noticed depositions, either informally or by way of a formal motion. In the motion now before the court, plaintiffs contend that defendant should have been required to organize the 10,000 pages of financial documents produced, but again, plaintiffs cannot show that they ever asked defendant to do so, either informally or by way of a formal motion.

Plaintiffs also complain that in July, 2014, defendant made 88 redactions to documents produced primarily on the basis of the work product privilege, but claim that defendant failed to provide sufficient explanation of the basis for the privilege. Specifically, plaintiffs complain that defendant asserted the privilege with respect to e-mails between Michelle Shideler and Randy McDaniel regarding plaintiffs' requests for accommodation, but that neither Shideler nor McDaniel are attorneys. Plaintiff never filed a motion objecting to the assertion of the privilege.

Plaintiffs also complain that defendant misled them about whether it received federal funding for the first year after this lawsuit was filed, causing the delay in their

ability to amend the Complaint to add a claim under § 504 of the Rehabilitation Act. Plaintiffs assert it was and remains improper for defendant to argue that the Lifelong Learning College is a separate entity from the K through 12 charter school, and does not receive federal funds.

Finally, plaintiffs argue that the court should use its inherent powers to grant them a default judgment because of certain statements reported in several local newspapers about this lawsuit, some of which are attributable to the defendant, and because of defendant's decision to close the Lifelong Learning College.

### B. Standard of Law

Plaintiffs seek sanctions under Federal Rule of Civil Procedure 37(c), the court's inherent powers, and 28 U.S.C. § 1967. Specifically, plaintiffs seek the most drastic sanction of default judgment, or the preclusion of defendant's undue burden defense. First, Rule 37(c) allows the court to impose sanctions, such as barring the introduction of certain evidence, where one party has failed to provide information as required by Rule 26(a), governing initial disclosures, or by Rule 26(e), governing responses to requests for production and other discovery vehicles. Sanctions are not available where the failure to provide information is substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). The most draconian sanction of default judgment is disfavored and is rarely imposed, and then only where one party willfully, and in bad faith, fails to obey the court's discovery orders such that allowing the case to proceed would be unfair to the innocent party. *See Malautea v. Xuzuki Motor Co.*, 987 F.2d 1536, 1543 (11th Cir. 1993). In *Malautea*, the Eleventh Circuit twice warned defense counsel that default judgment was a possible sanction for defendant thrice thwarting the court's discovery

orders.  *Id.*

Second, the court also has the inherent power to impose sanctions for discovery abuses under *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), but the Supreme Court has stressed that a court should "exercise caution in invoking its inherent powers."  *Id.* at 50. Imposition of sanction under the court's inherent powers requires a finding of "bad faith." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010).

Third, courts have power to impose sanctions for discovery abuses under 28 U.S.C. § 1927 when three elements are met: (1) the attorney must engage in unreasonable and vexatious conduct, (2) the unreasonable and vexatious conduct must multiply the proceedings, and (3) the sanction must be proportional to the expense caused by the misconduct.  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

### C. Analysis

The court turns now to its analysis of whether the most draconian sanction of default judgment is appropriate here and finds that it is not.  Plaintiffs state that only the harshest sanctions are appropriate as lesser sanctions are not feasible.  Plaintiffs oppose reopening discovery at this late date given that the trial is set to begin in several weeks, and they do not wish to adjourn the trial.  Plaintiffs also claim they lack sufficient time to consider any additional documents that defendant might be ordered to produce now.  The court addresses each of plaintiffs' specific allegations of discovery abuses and litigation misconduct below.  All fall woefully short of the kind of bad faith misconduct that courts have found warrants the imposition of sanctions.

1. **Joint Final Pretrial Statement and Conference**

Plaintiffs complain that defendant failed to cooperate in preparing the joint final pretrial statement and conference. The court has carefully reviewed the affidavit of defense counsel Mary Nardella. While it is clear that both sides had difficulty working together, the court is satisfied that the defense made reasonable attempts to cooperate in the process.

At the pretrial conference, defendant stated its intent to produce checks written from it to the Holding Company, apparently to show that any funds paid to it by the Holding Company were advances that needed to be repaid. (Doc. 267 at PageID 7414, 7422). Plaintiffs responded that they did not have copies of those checks, and that there had been no testimony that the charter school repaid advances from the Holding Company. *Id.* at PageID 7431. Defendant vehemently disagreed, insisting that there was no unfair surprise, but that there was testimony that the payments from the Holding Company to the defendant were advances that had to be repaid. *Id.* at PageID 7432. Judge Howard indicated her agreement with the defense that there had been testimony the monies paid from the Holding Company were advances, stating:

> And so I don't think it's surprising that there may have been repayment back, and so I think that to the extent that there is any surprise, we can simply address it by making a witness available to address those – for deposition on those issues.

*Id.* at PageID 7433. Plaintiffs' counsel indicated that proceeding in that manner was "agreeable." *Id.*

Plaintiffs also complain that at the joint final pretrial conference, defense counsel offered to make a witness available to discuss the checks written between the Holding Company and the defendant, but later refused to do so, stating that plaintiffs had

received all of the checks from the defendant to the Holding Company in connection with Wise's deposition. There appears to be no dispute that plaintiffs were provided with five reimbursement checks written from defendant to the Holding Company on November 11, 2014. (Defense exhibits 2, 19, 33, 34, and 45). Plaintiffs claim, however, that it is not enough that Wise, vice-president and CFO of the Holding Company, produced the reimbursement checks, but that defendant should have done so as well. Plaintiffs' argument is not persuasive. Plaintiffs had the checks in their possession since November, 2014; thus, they can show no unfair surprise or prejudice. Sanctions on this basis are not appropriate.

Moreover, this court has carefully reviewed the transcript of the second deposition of Ritch. During that deposition, plaintiffs relied on the exhibits produced by Wise. (Doc. 277-11). Plaintiffs questioned Ritch at length about the checks written from the Holding Company to the defendant, and from the defendant to the Holding Company. (Doc. 277-11 at PageID 7603-73). Because plaintiffs had the opportunity to discuss all of the checks, both the advances from the Holding Company to the defendant, and the alleged repayments made by the defendant back to the Holding Company, plaintiffs can show no prejudice that they received copies of the repayment checks from their subpoena to Wise, rather than from the general document request to the defendant.

**2.    Financial Documents**

As to the four profit and loss statements for the years 2010, 2011, 2012, and 2014 which were included on defendant's exhibit list but not previously produced during discovery, any prejudice was cured when the court permitted plaintiffs to take a Rule

30(b)(6) deposition regarding those documents. Plaintiffs did so when they deposed Ritch for the second time on November 30, 2016.

The court turns now to plaintiffs' argument that defendant should be sanctioned for not turning over other documents referenced by Ritch in her second deposition. Defendant responds that plaintiffs were on notice that such documents existed based on Ritch's first deposition and the deposition of Dr. Randy McDaniel's, Village's Charter Schools director of education. At her first deposition, Ritch testified about how each of defendant's departments operates its own budget and both she and McDaniel testified about how the Lifelong Learning College pays rent for use of the charter school facilities. (Doc. 287-7). Thus, there should have been no surprise to plaintiffs that records existed regarding the budgets of each department and documentation and proof of rent payments. Plaintiffs never specifically asked for those records. Plaintiffs argue that such records should have been provided in response to their general request for production of all financial documents; however, plaintiffs never filed a motion to compel with regard to those documents.

Similarly, plaintiffs' claim that they just learned of the existence of documents pertaining patron memberships, including the number, cost, and how many courses the patron members take each year during Ritch's second deposition is not convincing. The existence of those records should have been obvious to plaintiffs during the discovery period. Plaintiffs also claim they were prejudiced because they did not receive Ritch's accounting ledger, or an August 17, 2010 letter requesting an advance. It is hard to conceive why the availability of Ritch's accounting ledger would not have been obvious during her first deposition. As to the August 17, 2010 letter requesting an

advance, defendant has not stated any intention of using that letter at trial, and the harshest sanction of default judgment could not be imposed based on the omission of that one document.

### 3. Reimbursement Checks

Plaintiffs also claim sanctions are warranted because defendant failed to produce checks it sent to the Holding Company. It is undisputed that all of those checks were produced to plaintiffs' counsel at the deposition of John Wise on November 11, 2014. Plaintiffs' claim that the checks were "hidden" in the 140-pages of documents produced at the time of his deposition is not compelling. As discussed earlier, plaintiffs discussed all of those checks during Ritch's second deposition. Thus, no discovery sanctions are warranted on this basis.

### 4. 10,000 Pages of Documents

Plaintiffs object to defendant's production of 10,000 documents on the eve of depositions. Notably, plaintiffs never objected to the timing of the filing of the documents, never requested to reschedule the depositions, and never sought to re-take any of the depositions based on documents contained in that production. Plaintiffs never filed any motions objecting to the document production or its timing. Under these circumstances, no sanctions are warranted.

### 5. Work Product Privilege

Defendant prepared a supplemental privilege log in July, 2014, to which plaintiff objected to for the first time in December, 2016, long after discovery had closed. The court has reviewed the privilege log which identifies each document by Bates number and by date, describes the privilege raised, provides the subject matter of the document

at issue, and identifies the parties in each communication. Given plaintiffs' delay in objecting thereto, the court cannot find any basis for awarding sanctions on these grounds.

## 6. Statements Regarding Federal Funding

Plaintiffs claim that defendant purposefully misled them as to whether it received federal funds. In support of this claim, plaintiffs rely on a statement that they attribute to the mediator in February, 2013, and on two e-mails drafted by defense counsel in July, 2013. Defendant responds that the purported misstatement by the mediator is not attributable to it, is impermissible hearsay, and is not admissible under Local Rule 9.07(b). The court agrees.

As to the two e-mails drafted in July, 2013, the court has reviewed those documents and finds that they are not purposefully misleading. In those e-mails, defense counsel admitted that The Villages Charter School, Inc. receives federal funds, but denied that the Lifelong Learning College receives any such funds, claiming that the College's operating income is derived solely from class fees. (Doc. 287-1). Plaintiffs claim it is improper and contrary to Judge Howard's summary judgment ruling for defendant to contend that defendant's business was segregated into two halves — the K through 12 charter school and the Lifelong Learning College. But the e-mails in question were drafted over two-years before Judge Howard issued her summary judgment ruling. (Doc. 189). Plaintiffs also suggest that Judge Howard's order allowing them to amend their Complaint to add a Rehabilitation Act claim is precedent that defendant is covered by the Rehabilitation Act, when in fact, in that order Judge Howard noted that issue was hotly contested. (Doc. 92 at PageID 612).

To the extent that plaintiffs are complaining that defendant still seeks to present a case to the jury that the Lifelong Learning College did not receive federal funds, the court has already addressed that issue in its order deciding the parties' prior motions in limine. (Doc. 274). In that order, the court held that "evidence of how the Charter School Corporation uses (or is required to use) any federal funds it receives is relevant in determining whether those funds constitute available resources for purposes of the Charter School Corporation's undue-hardship defense." *Id.* at PageID 7511-12. Given this limited purpose, defendant may introduce evidence at trial discussing the organization of the K through 12 charter school and the Lifelong Learning College, and no sanctions are appropriate based on defendant proceeding in this way.

**7.      Statements to the Press and Decision to Close Lifelong Learning College**

Plaintiffs also seek sanctions because of defendant's statements about this lawsuit in the local media and because of defendant's decision to close the Lifelong Learning College. The court thoroughly addressed that issue in its prior order denying plaintiffs' motion for a preliminary injunction. (Doc. 285). For the same reasons discussed there, sanctions are not warranted based on any pretrial publicity or the closing of the Lifelong Learning College.

**D. Conclusion**

Because plaintiffs never sought a motion to compel to resolve any of their discovery disputes, the court never warned defendant the most drastic sanction of default judgment was a possibility, and the court has made no finding of bad faith or willful misconduct on the part of defendant, the harshest sanction of default judgment, or the equally severe sanction of prohibiting defendant from putting forth its undue

hardship defense, is not warranted.  To the extent that defendant seeks to introduce profit and loss statements not produced during discovery at trial, those documents were still produced three months prior to trial and any prejudice has been cured by the Rule 30(b)(6) deposition of Ritch.  Accordingly, plaintiffs' motion for sanctions (Doc. 282) is DENIED.

**IT IS SO ORDERED.**

Dated:  January 10, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 10, 2017, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk